Chief Judge Schroeder, I may appease the Court. My name is Susan Martin on behalf of the plaintiffs. I'd like to reserve five minutes for rebuttal if I may. You'll have to help keep track of your own time, though, because this is the whole time, Michelle. Thank you. The elapsed time regulation is invalid under ERISA because it denies to participants credit for a year of service for vesting purposes after they've worked 1,000 hours. You know, I hear your argument on that, and, of course, you devote a considerable amount of time to it in your brief to us. But as I understand your position in the district court, it was that the regulation should be interpreted so as to be consistent with ERISA, or put differently, so as to produce a result that is at least as equitable as the 1,000-hour-per-year rule. And while there was a smattering of references to potential invalidity of the regulation, I have read every piece of paper in the district court and transcript and just come away with the overwhelming sense that that issue was never squarely presented to the district court, and, indeed, the opposite was true. Your Honor, if I may, I think that not only was the issue presented to the district court, but on further review, I think it was decided by the district court. And I think that we were quick to state that the district court didn't decide it because there wasn't a very long discussion. But if you look at the district court's opinion, the district court clearly discusses that as an initial matter, the elapsed time regulation is valid, and it goes on to cite Sueda, Coleman, and Jefferson v. Vickers, and states our argument as being that you have to interpret the elapsed time regulation in a manner consistent with the 1,000-hour rule. Which is just what I said. Yes. That was the rest of the argument. It was our principal argument, Your Honor, that the elapsed time regulation should be interpreted in a manner consistent with ERISA. I think it's a very different point from saying the regulation is invalid. No. The corollary to our argument, and I think it's very clear from all of the papers in the court below, but certainly from our pleadings, our motion papers, and even the oral argument, that we said that if you don't interpret the elapsed time regulation in a manner consistent with the 1,000-hour rule, then the elapsed time regulation must be invalid. If you look at the oral argument before, there's another reference that we didn't put out in our reply brief. At page 450 of the supplemental excerpts of the record submitted by the defendant, Mr. Knapp characterizes the only two issues in the case as, if I may read just the second issue being, and are the elapsed time regulations valid? And if so, was the construction consistent with the elapsed time regulations? That's at lines 24 and 25 of page 47 of the transcript of the oral argument. All right. Let me pursue Judge Rimer's question. As I read the record, the Second Amendment complaint alleges under Count II that Gore violated ERISA's benefit accrual provision by failing to make an allocation of stock or other assets through the plan, even though no plaintiff was separated from service by Gore by reason of, quote, quit, discharge, retirement, or death. It does not claim that the elapsed time regulation violates ERISA. We don't. We claim in Count VII, Count VII asks for injunctive and other equitable relief under ERISA Section 502A3. And in our wherefore clause, we ask for a declaration declaring that the defendants violated the vesting and accrual of benefit rules under ERISA. It says, as to count, excuse me, under B, it says, I'm sorry, under D, declaring that defendant violated ERISA's vesting requirements, 29 U.S.C. Section 1052. I think that is ample basis to lay the foundation for declaring that the elapsed time regulations violate ERISA. If you ask for a declaration that defendants violated the vesting rules of ERISA, and it's our position in the district court that if you interpret the elapsed time regulations in a manner that deprives plaintiffs of credit and is inequitable or less equitable than the 1,000-hour minimum standard, then either defendants violated the elapsed time regulation or the elapsed time regulation is invalid. The court ruled that the elapsed time regulation was valid. I think the court clearly ruled that as a predicate to finding that it wasn't violated by the defendants, and I think in this court we're entitled to assert, because we raised it and argued it, and, in fact, the issue was decided below, and the defendants conceded that. That was the issue being presented to the district court. Let me ask you another question. What was the effect of your withdrawal of count one of your complaint? Count one of the complaint was a count asserting that the defendants failed to set forth accurately in the SPD what the basis for vesting credit was. There are references to that all over the record, and I can point those out to Your Honor, but that was the complaint. It said we asserted that the SPD failed to accurately set forth what the provisions for vesting were and that, therefore, the default rule applied. And when we withdrew count one, that was the count that we were withdrawing, that the SPD did not specify accurately what the vesting provision was, whether it was elapsed time or hour of service, and we said the 1,000-hour rule applied, that by no means withdrew from the case our claim that the vesting rules were violated by the defendant as it set forth under count seven and as set forth in the wherefore clause. We didn't think, okay, if I may, on the elapsed time issue, neither the Coleman not the Sueda decision by Judge Weinfeld was a pre-Chevron decision which could not withstand Chevron scrutiny today. That's because Congress spoke directly to the issue of what is a year of service, as provided under the Vesting Section 203 that a year of service is 1,000 hours in a 12-month period. But let me ask you on that. You've got three circuits who have now spoken on an issue that let's suppose is somewhat close. But three circuits have spoken on it. ERISA is a national problem, and uniformity of Federal law is extremely important for business and for employees as well. On that footing alone, why shouldn't we go out of our way to create a circuit split? Your Honor, I think that giving a fair analysis to the issue, you would have to create a circuit split, if you will, because the reasoning behind the Sueda and Coleman cases can't withstand scrutiny. Judge Weinfeld recognized that the plain you have to look at the plain language of the statute. In a post-Chevron world, that analysis produces the result that the agency had no authority to undermine the statutory definition of 1,000 hours. Well, what about that part of the statute that delegates the authority to the Secretary to define the year of participation? I think there are specific delegations of authority to the Secretary in Sections 202, 203, and 204. They are to define the computation period for the year of service. How are we going to define it? Is it the 12-month calendar year? Is it the plan year? Is it the anniversary date of a participant's employment? There's also a specific delegation to the Secretary to define a year of service for a seasonal industry where 1,000 hours is customary work less. If the Secretary had authority to write regulations, and let's say assuming for argument that he had the authority to write a year of service regulation, it would be contrary to the intent of the statute and the clear, plain language of the statute and then would be invalid as an exercise under the Chevron test because it wouldn't draw its essence or it would conflict with the clear language of the statute. You can't say that part-time workers, for example, who are protected under the statute and seasonal workers who are protected under the statute have greater rights than full-time workers working 40 hours a week. That would be an irrational decision, and yet that is the decision that doesn't stand in this case because the elapsed time regulation says that part-time workers working 20 hours a week for 50 weeks get a year of credit and full-time workers working 40 hours a week for 26 weeks get no credit. It makes no sense given the clear understanding of the statute. And if the statute weren't clear, then I think the legislative history was. And I'd like to point out, in the conference report, there is further evidence that pro rata benefits, for example, are required. At page 269 of the conference report, there's this sentence. For example, if a plan requires the plan must accrue benefits for less than full-time service on at least a pro rata basis. For example, if a plan requires 2,000 hours of service for a full benefit accrual, 50 weeks of 40 each, then the plan would have to accrue at least 75% of a full benefit for a participant with 1,500 hours of service. Clearly, Congress intended that there be pro rata benefits, that there be no requirement that you serve a full year. And Section 204 on the accrual of benefit rules, for example, says that it would not be reasonable and consistent if any employee's services less than 1,000 hours during a calendar year shall not be treated as not made on a reasonable and consistent basis. The contrapositive of that requires that any employee who works more than 1,000 hours be given a pro rata benefit. Likewise, Section 204b-4, which says that any employee whose work is less than full-time is entitled to a rateable portion. We wind up with absurd and irrational results if we say that Congress exalted the interests of seasonal workers and part-time workers over the workers who work full-time 40 hours a week, 52 weeks a year, as did the plaintiffs in this case. I think that one of the problems before Judge Posner in the Coleman case was that perhaps all of the legislative history wasn't identified to him. We identified in our brief the fact he concluded that despite the plain language of the statute, which he called an obscure definitional provision, but which we say is the plain language of the statute, he said despite that he couldn't believe that Congress would overrule a practice in existence prior to ERISA without some reference to it. We've argued that inferences from silence are perilous, as Judge Posner himself recognized. But aside from that, the Curtis Amendment, which appears in both our brief and the amicus brief submitted by the National Pension Rights Center, show that he introduced an amendment to require the elapsed time rule and that that amendment was rejected. So there is specific legislative history that Congress considered and did not adopt the elapsed time rule. Also, I think the fact of the matter is that the thousand-hour rule was a compromise from the Senate version, which sought to give credit for five months of service. It was 80 hours and five — 80 hours a month for five months. And the House version which sought to give all of the authority to the Secretary. So, Your Honor, whether or not the Secretary had authority to draft regulations, and they clearly had some authority to draft certain regulations, they had no authority to draft an hour of service regulation that eliminates the counting of hours altogether. It's been an awful long time since those decisions, you say, pre-Chevron, yet Congress has done nothing about it. Now, I realize that that's not either a super compelling argument, but it has some force in this area, which is, after all, a very political kind of area that involves lots of sensitive negotiations in Congress. Why shouldn't — if we were going to reach the merits, why shouldn't we take that into account as well? I think, Your Honor, that subsequent legislative history is just that. It doesn't give — it doesn't shed very much light on what the meaning of the statute is. Well, it's not legislative history. It's the absence of any action in the face of three circuits taking a position. That's correct, Your Honor. And the fact of the matter is this Court consistently makes decisions that — and so does the Supreme Court that upsets settled principles, most recently, for example, in Great West. I mean, since ERISA was enacted — The Circuit surely never does anything like that. No way. Most recently in Great West, after 30 years of allowing plans to sue for reimbursement of a participant's failure to reimburse the plan, the Supreme Court upheld this circuit in holding that there is no such right under ERISA, that we're not to imply remedies or rights that are not there, and that we are to apply the plain language of the statute. If the post-ERISA Supreme Court decisions have taught us anything, it is that the courts are to apply the statute as written, not to imply things that aren't there and to apply the plain English language usage. I see that. If I'd like to reserve time for that, I should stop. Thank you. I just have one quick question. Yes, Your Honor. I don't want to use up your time. It seems to me that your interpretation of the elapsed time regulation asks the Court to ignore the fact that under the elapsed time method, an employee's statutory entitlement is determined while he's employed. You aren't contending that the employment relationship existed after the employees were discharged, are you? We're saying that if you applied the – if you uphold the elapsed time regulation, then, yes, service under the plan continued until the one-year anniversary date of the layoff. They said they were laid off. They said they were laid off, repeatedly said – in dozens of communications, they said they were laid off. And that they were not laid off, but were fired, discharged, whatever. One comment on that issue, and I think if you look at canons of statutory construction as applied to regulations, the regulation itself uses the word termination, and this Court has recognized that you don't ascribe the same meaning to the word termination as you would discharge. The regulation in the hour of service rule in saying that 500 hours are to be credited if an employee under the general rule continues to be paid after the termination of the employment relationship, giving legal significance to the agency's selection of the word termination there and the selection of four distinct types of terminations in the elapsed time regulation, quit, discharge, retirement, and death, shows a number of things. One is that the agency knew how to use termination if they wanted to include all employment terminations under the immediate severance of service provision in the elapsed time. And it also shows under the way the courts interpret regulations and statutes is you can't ascribe termination as a meaning to the word discharge where the agency used the same word termination in a different part of the regulation. Thank you. Mr. Knapp. May it please the Court. My name is Charles Knapp, and I represent the appellate plan in this matter. I want to make clear that the participant appellants in this case all ceased their employment with W.L. Gorin Associates in late 1998 and early 1999 when their employment was permanently terminated as a result of the permanent closing of the Phoenix plan at which they worked. Now, there was no ambiguity at the time as to what was happening to the participant's employment. Gorin used the word layoff. It also used the words termination, severance, and separation. It provided severance pay. It issued Warren Act notices, and it provided job placement counseling so these participants could find employment elsewhere. There is no dispute in this case that the employment relationship with Gorin ended on the date of their termination. What was the language that Gorin used in connection with describing what it was doing with the plan? It used the word permanently closed. Permanently closed. Yes. And there was also no ambiguity at the time as to how that termination would affect the appellant's rights under the benefit plan. The SBD and the plan itself is clear. Its service is calculated in reference to employment. And if that wasn't clear enough, a plan administrator from Delaware flew to Phoenix, met with these participants, and told them, among other things, that their termination of employment date would be their severance and service date under the plan. If they were not employed as of March 31, 1999, they would receive no contribution for the plan year ending March 31. And if they didn't have five or more years of service by the date of their termination, they would not be vested. Were there other plans operated by the company? Yes. And, indeed, the decision in this matter was consistent with the plan administrator's decisions in the past, where there had been plan closings, Gorin had used the term layoff, and the plan interpreted the severance and service provision exactly the same. So there was consistency here. Now, the appellant's only argument to the plan administrator and their principal argument in the district court proceeding was the argument that because Gorin used, among other words, the words layoff and describing their separation from service, they should be entitled to an additional year of service under the plan. Just one moment. I'm trying. Did they offer or attempt to find replacement for any of these people in the other plans? There were some individuals that relocated to the East Coast. The facility, the operations were moved from Phoenix and incorporated into another plant in the East Coast. None of the participants in this case were offered that opportunity. They were not offered that opportunity. Right. So the plan administrator considered very carefully the arguments raised by the appellants below in the plan administration level, where they were represented by counsel who represented them at district court proceeding. It faithfully followed both the terms of the plan and the law, which requires that a plan administrator must faithfully interpret the expressed terms of the plan and must apply the plan terms consistently. And so as a result, the Class A plaintiffs, who had more than four but less than five years of service, were not entitled to an additional year of service and therefore didn't vest. Their accounts were forfeited and redistributed to the other plan participants. The Class B plaintiffs, who had more than five years of service and who had vested, were not entitled to a contribution at the end of the plan year. Now, in the district court proceeding, this matter was very heavily briefed, both before Judge Silver and then Judge Merguia once she was assigned to the bench. Opposing counsel twice brought these miscellaneous arguments about procedural deficiencies, procedural irregularities, deficient SPD and breached fiduciary duty. Both Judges Silver and Merguia rejected those arguments and found that an abuse of discretion standard of review was appropriate. But more importantly, Judge Merguia found that regardless of the standard of review, the plan administrator's decision was the only reasonable decision and was entirely consistent with the terms of the plan as well as the elapsed time method regulation itself. We believe Judge Merguia's decision in that respect should be affirmed and if so, these other miscellaneous arguments fall out the window. Well, maybe you could help me with a problem I'm having. In regard to your argument that the elapsed time regulation is valid, how do you account for the fact that under the elapsed time regulation, the statutory year of service and hour of service requirements are collapsed into a period of time requirement? Our argument with respect to that, and if I could back up just briefly and look at the procedural history here with respect to that argument, the appellants amended their complaint by asserting two statutory counts. Count one was under Section 1053, which dealt with vesting. Count two was Section 1054, which deals with benefit accrual.  Count two only argued for enforcement of the elapsed time method regulation, and I encourage the Court to look very carefully at those two counts. Count one was withdrawn. Opposing counsel's argument here stems primarily from Section 1053, which is the vesting provision, and not Section 1054, which is the year of participation section, which Your Honor mentioned defines year of participation differently than Section 1053 defines year of service. Section 1054 defines a year of participation as a period of service as determined under regulations prescribed by the Secretary which provide for the calculation of such period on a reasonable and consistent basis. That is clearly a deferral to the agency to adopt accrual year of participation regulations in its discretion. What they are relying on is Section 1053's definition of year of service, and it is our position that that, under the Chevron analysis, even if the Court goes there, which I don't think the Court needs to because Section 1053 was withdrawn out of the complaint and the only count left in the complaint was Section 1054. But if the Court looks at Section 1053, we think it's ambiguous for two reasons. First, as found by the Coleman Court, it's altogether unclear whether what's required is 1,000 hours and 12 months of employment or simply 1,000 hours within any 12-month period of time, whether the employee works those 12 months or not. In addition, that regulation is vague because hours of service are defined as a time of service determined under the regulations prescribed by the Secretary. So it's not even clear looking at the statute what 1,000 hours of service are because that is relegated to the Department of Labor to determine. Now their argument, the appellant's argument, is that the elapsed time method regulation is somehow invalid because it leads to some situations where a participant who has worked 1,000 hours is not given credit for 1,000 hours. But that same problem exists with the 1,000-hour regulations. As we pointed out, unlike the very clear and simple elapsed time method regulation, the 1,000-hour regulations are very complex, and contrary to what opposing counsel have this Court believe, 1,000 hours of service under that regulation may not actually be 1,000 hours of actual work. Among other things, there are these equivalencies that the regulation provides for, a daily equivalency, weekly, bimonthly, monthly. Under those equivalencies, a plan administrator may assign an artificial time hours of work for a week or for a month, bimonthly or a day. Forty-five hours a week, for example, is the weekly equivalency. As we pointed out, use of those equivalencies will lead, in some circumstances, to situations where somebody who has actually worked 1,000 hours does not get credit for a year of service. The example we gave in our brief was the accountant who works 70 hours a week from January 1st to April 15th, then quits on April 16th because she's been willfully overworked. That accountant has worked 1,000 hours of service in that three-month period. However, if the plan that she's a participant in uses any of the equivalencies under the 1,000-hour method, she does not get a year of service because under any of those equivalencies it doesn't amount to 1,000 hours. So simply ñ She doesn't get credit for overtime under those equivalencies, I take it. Right. She works a 90-hour a week. She gets credit for 45. She gets 45. Okay. And they're not claiming the 1,000-hour method regulation is invalid, but they're claiming that the same thing that allegedly makes the elapsed time method fatal makes the elapsed time method fatal but not the 1,000-hour regulation. So it's our position that 1054, which is the benefit accrual provision, expressly delegates authority to the agency, in this case the Department of Treasury, to define year of participation. The year of service definition under 1053 is ambiguous, and therefore you get to the very deferential standard of review of Chevron. Is it arbitrary, capricious, or manifestly contrary to the statute? No one here seems to be arguing that it's arbitrary or capricious. The argument seems to be that it's manifestly contrary to the statute. In essence, the elapsed time method is an annual equivalency, and it is, as even the automated packaging court found, the elapsed time method regulation is generally more favorable to planned participants than the 1,000-hour method regulation. And so in that sense, it's certainly not manifestly contrary to the statute. In addition, one of the purposes of ERISA is to protect participants, encourage employers to develop plans, and to avoid creating a system that's too complex. The elapsed time method regulation, where all you look at is employment, is much more clear and much more simple a method of calculating service than the 1,000-hour method regs. Indeed, it not only helps a plan administrator, but it provides clarity and simplicity for a participant as well to determine on their own what is a year of service. In addition, as noted in automated, plans may allow more liberal vesting than required by the Act as long as it assures a degree of vesting protection at least as equitable as that required by the Act. And it would be our position that, as found by automated and these other courts, that although it's not perfect, the elapsed time method regulation does provide a level of protection at least as equitable as the 1,000-hour method. Indeed, it provides years of service to participants who work part-time that may not work 1,000 hours. As long as they've been employed a full year, they get a year of credit. It has this provision in it where if you terminate employment, let's say, on January 3rd, the plan uses a calendar year, and you come back and accept employment with the same employer on December 15th and remain employed through the remainder of the calendar year, even though you've only worked three weeks, perhaps you get a year of service. So there's a number of things about the elapsed time method regulation that makes it, in fact, more favorable to plan participants. And what plaintiffs or the appellants would ask this court to do would be to invalidate that regulation, to overrule nearly 30 years of established precedent, to ask the court to contradict the Second, Seventh, and Eighth Circuit and every district court that's looked at this argument,  to overlook the fact that this claim was not even in the second amended complaint and was disavowed below, and to invalidate hundreds of thousands of benefit plans across the country and to put plan participants across the country in a position where they cannot seek the protections of the elapsed time method regulation. Indeed, in this case, as we've pointed out in our briefing, there are some participants in this case that could stand to lose benefits and perhaps lose vesting if the thousand-hour method regulation were applied as opposed to the elapsed time method. And it was that issue that we brought up after opposing counsel amended the complaint to add counts one and two. And it was opposing counsel who conceded in a hearing before Judge McGee, a telephone hearing, the transcript of which is before the court, that, yes, that may be a problem with us trying to advance both the thousand-hour theory and the elapsed time theory, creating a potential conflict of interest. So they withdrew count one. So they withdrew count one. And not only that, we relied on that and agreed to class certification based on that position. And lo and behold, although that was out of the case, it came up again at summary judgment. And, yes, one could argue that somewhere hidden in there in the briefing was a claim that the elapsed time method was invalid. It wasn't entirely clear to us what opposing counsel was arguing and apparently not entirely clear to Judge McGee. And when she asked opposing counsel if that's what they were proposing, invalidity of the elapsed time method regulation, I believe opposing counsel is very clear in saying that they were not arguing that the thousand-hour method should apply. And she tried to distinguish the arguments that they were making in this case from the arguments made in the Jefferson, Coleman, and Swaida case. Her argument was that it somehow should be used to inform interpretation of the elapsed time method regulation. Judge McGee properly concluded that there's nothing in the regulation that would incorporate or bootstrap in that thousand-hour method regulation into the elapsed time method. So for all those reasons, Your Honors, we ask that Judge McGee's decision be affirmed. And if you have any questions, I'd be happy to take those. Thank you. Thank you. To respond to a few of the points of counsel, the elapsed time regulation contemplates that his accountant example could not be applied. In section 200B-3C of page 146 of our addenda, it says that a classification will not be deemed to be reasonable if such classification is designed with an intent to preclude an employee from attaining statutory entitlement. If you have a company of accountants who work 70 hours a week and wouldn't be vested under the equivalencies that are adopted, it wouldn't be reasonable and it wouldn't be permitted under the regular hour-of-service rules. Showing that the elapsed time regulation is irrational, and we are claiming that it's arbitrary and irrational, is by comparing it to the equivalencies contained under the general hour-of-service rules. The general hour-of-service rules have an equivalency for months of employment that say for every month of employment, if you don't want to count hours, you give someone 190 hours of credit. Using that equivalency is no more difficult than using the elapsed time method, counting 6 months versus counting 12 months. You know, I guess what troubles me, Ms. Martin, is that there has to be some system, doesn't there? Yes. You can't just have someone pick whatever system seems to be, fit that person the best or that group of employees the best. Your Honor, I agree with you, but the statute is very clear. The system has to be based on hours-of-service. That's what the Secretary had a specific authority to develop regulations regarding hours-of-service, and it says that 1,000 hours will equal a year-of-service. Now, how the Department of Labor adjusted that using hours-of-service, we're not quarreling with, they established equivalencies based on hours and based on days, weeks, and months. It's no harder to count months than it is to count a year or an elapsed year, and it's irrational to say that someone who gets 190 hours of credit per month and therefore would have well over 1,000 hours in 6 months would not have any credit whatsoever under the elapsed time rule unless they completed a full year. That's not rational. And the authority to grant, to promulgate regulations to implement the 1,000-hour rule and to define hours-of-service was not authority to eliminate the counting of hours or to credit after reaching the equivalent of what the DOL said was 1,000 hours. With respect to the ambiguity, we pointed out in our brief that Judge Posner's ambiguity, I see that my time is up, so I thank you. Thank you. Thank you. The case just argued is submitted for decision. The Court appreciates the quality of the argument presented this morning on both sides. We'll hear the next case. Well, the next case listed is Askinell v. Rudnick. That case is submitted on the briefs, and we'll hear the last case for argument, Contract Management Services v. Travel Nurse International. Thank you.
judges: Schroeder, Dw Nelson, Rymer